THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE ADAMS, Defendant-Appellant.

First District (5th Division)    No. 81—367

Opinion filed July 8, 1983.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Joseph L. Ponsetto, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, defendant was convicted of robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—1) and sentenced to a term of three years' imprisonment. On appeal, defendant claims that the trial court's application of the affidavit requirement of Rule 15.1(e) of the rules of the circuit court of Cook County[1] (the Rule) to his motion to suppress identification testimony violated his rights of equal protection of the laws and freedom from self-incrimination, and also infringed upon the attorney-client privilege. Further, in the event the Rule is not found to be unconstitutional, defendant claims that his attorney's failure to comply with the affidavit requirement deprived him of effective assistance of counsel. For the reasons that follow, we affirm the trial court.

The pertinent facts indicate that prior to trial, defendant moved to suppress identification testimony which was based upon an allegedly suggestive and improper lineup conducted on April 10, 1979. The State responded that because the motion was based on facts not appearing of record, the Rule required that a supporting affidavit be

---

[1]Rule 15.1(e) of the rules of the circuit court of Cook County states in pertinent part:

"*** A motion founded upon facts not appearing of record in the case shall be supported by affidavit reciting the facts."

filed. Further, because defendant had failed to comply with this requirement, the motion should be denied. In response, defendant argued that the law did not require an affidavit when an evidentiary hearing on the motion was scheduled. Rather, the affidavit was required only when facts were not going to be of record. The court then stated, "You have to have the affidavit to show before the hearing, that is the purpose of the rule." As a caveat, the court explained that the defendant himself did not have to file the affidavit, "but somebody has to file it to substantiate these facts not of record" and to limit the issues.

Defense counsel replied that they would stand on their motion as filed, arguing that to require defendant to file an affidavit was a form of self-incrimination. For the record, defense counsel stated that defendant's motion alleged facts that would prove that the lineup was suggestive and improperly conducted, and that they were prepared to present evidence to satisfy their burden of proof.

After further arguments of counsel, the trial court reiterated its ruling that the affidavit requirement must be complied with or else he would strike the motion. Defense counsel declined to comply with the requirement and stated that the court's decision to strike the motion would deny defendant "his rights to counsel, *** to trial by jury, *** to raise constitutional issues relative to an identification which he has specifically laid out the facts in his motion which he expect [sic] to prove at a *** full evidentiary hearing." Defense counsel then presented the following offer of proof: (1) defendant was arrested on February 27, 1979; (2) defendant participated in a lineup on April 10, 1979, during which he was viewed by the alleged victim, June Wilson; (3) on March 5, 1979, the victim made a photographic identification of defendant and these photographs were present in the lineup room and shown to the victim during the course of the lineup; (4) defendant requested that his attorney be present at the lineup; (5) Roxanne Wisnar of the Cook County public defender's office would testify that at the time the lineup was conducted, defendant was represented by the public defender's office in an unrelated matter; that she was notified by the police that defendant was going to appear in a lineup one hour before the lineup was scheduled; that she did not have time to notify defendant's attorney and could only post a notice about the lineup on the bulletin board at 26th and California; that the assistant public defenders who represented defendant were in Markham, Illinois, at the time of the lineup and, thus, received no notice of the lineup.

Thereafter, trial proceeded by way of stipulation. The State stipu-

lated that if the victim, June Wilson, were called to testify, she would testify as follows. On February 18, 1979, approximately 8:30 p.m., as she was standing outside of her apartment hallway, defendant approached her with a pointed metal object in his left hand and said, "Give it up." Before defendant grabbed her purse and ran off, Wilson had a direct look at him for approximately 20 seconds in a well-lit area. Immediately after defendant fled the scene, Wilson called the police and, subsequently, gave them a detailed physical description of her assailant.

Thereafter, on March 4, 1979, at police headquarters, Wilson was shown three or four mug shot books which contained approximately 1,000 photographs from which she identified a photograph of defendant as her assailant. On April 10, 1979, at a lineup proceeding at Cook County jail, Wilson again identified defendant as her assailant. The State further stipulated that if Wilson were shown a photograph of a lineup conducted on February 27, 1979, she would identify defendant as her assailant and testify that defendant was wearing the same clothing in the photograph that he wore on the night of the robbery. Defense counsel then stipulated that the facts related by the State would be those testified to by the victim; however, he would not stipulate to the truth of those facts.

After the State rested its case, defendant's motion for a directed verdict was denied. Subsequently, defendant's offer to testify was withdrawn and defendant rested his case without presenting any evidence. The court then rendered its judgment.

Thereafter, defendant moved for an arrested judgment, or, in the alternative, a new trial on the ground that when the trial court refused to grant a hearing on defendant's motion to suppress, it denied defendant due process of law, equal protection of the law, and effective assistance of counsel. At the post-trial motion hearing, the State argued that the rules of the circuit court apply to all cases and the decision not to file an affidavit was a tactical decision, not an act of incompetence. In denying the post-trial motion, the court admitted that the Rule is not uniformly enforced, but emphasized that adherence to the Rule is necessary to avoid "a discovery hearing that wonders [sic] all over the lot." Defendant's timely appeal followed.

OPINION

We first address defendant's claim that application of the Rule's affidavit requirement to his motion to suppress violated his right to equal protection of the law. In support of his contention, defendant argues that: (1) the Rule is not uniformly enforced among criminal liti-

gants, and (2) civil litigants are not required to file a similar affidavit.

Pursuant to legislative authority,[2] the rules of the circuit court of Cook County were adopted by the circuit judges in order to effectuate the administration of justice and to simplify judicial procedure. In determining the constitutionality of a legislative enactment or a law passed pursuant to legislative authority, the judiciary is limited to a determination of whether the law is a valid exercise of the State's police power to promote the public comfort, health, safety, morals or welfare. (*Henson v. City of Chicago* (1953), 415 Ill. 564, 570-71, 114 N.E.2d 778.) To be valid, the legislation must not only bear a reasonable relationship to one of the foregoing interests, but the means adopted to promote that interest must be reasonable. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327, 265 N.E.2d 640.) Because the legislature is granted broad discretion in determining how best to secure the interests of the public welfare, the court will not disturb a police regulation merely because there is a difference of opinion as to its wisdom, necessity or expediency. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115, 398 N.E.2d 829.) Moreover, a strong presumption of constitutional validity attaches to authorized enactments, and the party attacking a law has the burden of showing that it is unreasonable. *People v. Copeland* (1980), 92 Ill. App. 3d 475, 479-80, 415 N.E.2d 1173.

■■ With these legal axioms in mind, we now analyze the Rule's affidavit requirement for a determination of its reasonableness. The trial court, in making its ruling on the requirement, stated that the Rule requires that an affidavit attesting to the veracity of the facts in a pretrial motion be filed before a hearing on the motion if those facts have not yet become a matter of record. The court further explained that the objectives of the Rule were to limit the issues and to prevent the hearing from becoming a discovery deposition. We concur with the trial court's rationale and find that the affidavit requirement is a reasonable means by which to efficiently administer justice and simplify judicial procedure, as authorized in section 1—104 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 1—104). Furthermore,

[2]Section 1—104(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 1—104(a)) authorizes the Illinois supreme court to promulgate rules of pleading, practice and procedure for the circuit, appellate and supreme courts. Pursuant to this authority, the Illinois supreme court promulgated the Supreme Court Rules (87 Ill. 2d R. 1 *et seq.*), which include:

"(a) Appellate Court and Circuit Court Rules. *** [A] majority of the circuit judges in each circuit may adopt rules governing civil and criminal cases ***." (87 Ill. 2d R. 21 (a).)

we find that it is a valid exercise of the State's police power to promulgate bodies of statutory law establishing and regulating its criminal justice system. *People v. Zahn* (1979), 71 Ill. App. 3d 585, 589, 390 N.E.2d 93.

■ Regarding equal protection, defendant argues that the trial court's admission that the Rule is "not uniformly enforced" is sufficient proof in and of itself to establish that this right was violated. We disagree. The constitutionality of a statute is not dependent on its susceptibility of misapplication. (*People v. Raby* (1968), 40 Ill. 2d 392, 397, 240 N.E.2d 595.) As discussed, the Rule was enacted pursuant to a valid exercise of the State's police power. The fact that the Rule has not been consistently enforced does not reflect on the constitutionality of the Rule. Further, the fact that the trial court had previously ruled in this case that an affidavit was not required to support defendant's earlier motions to quash arrest and suppress statements is evidence of nothing more than a trial court error from which defendant gained a benefit. Such a ruling does not preclude the trial court from correcting its error at a later time, nor does it render the Rule unconstitutional.

■ Defendant further argues that requiring criminal litigants, but not civil litigants, to file an affidavit with pretrial motions also violates the equal protection clause. We disagree. The equal protection clause does not deny States the power to treat different classes of persons in different ways. (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1034-35.) Only "[w]hen the law lays an unequal hand on those who have committed intrinsically the same quality of offense and [penalizes] one and not the other" is the equal protection clause violated. (*Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 86 L. Ed. 1655, 1660, 62 S. Ct. 1110, 1113.) Moreover, the equal protection clause requires equality between groups of persons similarly situated and does not require equality or proportionality of penalties for dissimilar conduct. (*People v. Bradley* (1980), 79 Ill. 2d 410, 416, 403 N.E.2d 1029.) In this regard, it cannot be argued that a defendant convicted of a criminal offense is similarly situated to one found guilty in a civil action. Therefore, we concur with the rationale expressed by the supreme court in *Bradley* and conclude that no equal protection violation emerges in the case at bar.

■ We next address defendant's contention that the Rule's affidavit requirement violates his right to be free from self-incrimination. The privilege against self-incrimination protects an accused from being compelled to testify against himself, or otherwise provides the prosecution with evidence of a testimonial or communicative nature.

(*Schmerber v. California* (1966), 384 U.S. 757, 761, 16 L. Ed. 2d 908, 914, 86 S. Ct. 1826, 1830.) The circumstances in the case at bar do not fall within this protection for two critical reasons. First, defendant was not compelled to sign the affidavit. The trial court explicitly stated that anyone with knowledge of the facts could sign the affidavit, even defendant's attorney. In this regard, defendant argues that if his attorney had signed the affidavit, the attorney-client privilege would have been violated. We find this argument untenable. In order to be a confidential communication protected by the attorney-client privilege, the parties must have intended that the contents of that communication not be disclosed to a third party other than in the rendition of legal services. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 505.2, at 206 (3d ed. 1979).) Clearly, the information contained in defendant's motion to suppress was obtained by his attorney with the mutual intent that it be disclosed to other individuals as necessary to the rendition of legal services. To view the communication otherwise would suggest absurd consequences. When defendant divulged information to his attorney indicating that the lineup was improperly conducted, the clear intent was for that information to be made public by filing. Therefore, the attorney-client privilege would not have been violated had defense counsel signed the affidavit.

The second reason the circumstances at bar do not invoke the privilege against self-incrimination is that neither the motion nor the affidavit contained testimony that would inculpate defendant. The motion merely admitted that defendant was in the lineup, a fact that is not in issue. All other allegations therein, if true, aid, rather than hinder, defendant's situation. Therefore, because defendant was not compelled to sign the affidavit and because his guilt could not be inferred from the substance of either the motion or the affidavit, we conclude that no risk of incrimination exists. Collaterally, we note that defendant's right to be free from self-incrimination is afforded further legal protection in that the contents of the motion and the affidavit could not have been used against him at trial if objected to by his counsel (*People v. Wade* (1979), 71 Ill. App. 3d 1013, 389 N.E.2d 1230; *Wade v. Franzen* (7th Cir. 1982), 678 F.2d 56), and the affidavit does not act as a waiver to invoking the privilege against self-incrimination in the event defendant had taken the stand. *Samuel v. People* (1896), 164 Ill. 379, 383, 45 N.E. 728.

Finally, we address defendant's alternative argument that if the Rule does not conflict with any constitutional guarantees, the cause must be reversed and remanded on the ground that defendant was denied his right to an evidentiary hearing as a result of defense coun-

sel's incompetent representation.

▉▉ When faced with the question of competency of counsel, the pertinent inquiry is whether counsel caused such substantial prejudice to his client that the outcome was probably changed. (*People v. Talley* (1981), 97 Ill. App. 3d 439, 443, 422 N.E.2d 1084.) To make this evaluation in the case at bar, we must look to the substance of defendant's motion and determine whether if an affidavit had been filed and a hearing held, the outcome of the trial would probably have been different.

As grounds for his motion to suppress identification testimony based upon an improper lineup, defendant contends that: (1) the victim was shown photographs of defendant while she was viewing the lineup, and (2) defendant was prejudiced by his counsel's absence at the lineup. Upon review of the record, we find no evidence to support defendant's allegation that photographs were present at the lineup proceeding. A bare allegation without support is not sufficient for our review. Thus, our focus will be on the absence of counsel at the lineup identification. In support of this allegation, defendant stated in his offer of proof that Roxanne Wisnar of the public defender's office would testify that she was given one hour's notice that defendant was to appear in a lineup and that, during that time, she was unable to locate the particular public defenders who were currently assigned to represent defendant in an unrelated matter.

▉▉ ▉ It is well established that, absent waiver, the sixth amendment right to counsel includes the right to have counsel present at a post-indictment lineup. (*United States v. Wade* (1967), 388 U.S. 218, 237, 18 L. Ed. 2d 1149, 1163, 87 S. Ct. 1926, 1937.) Because defendant did not waive this right, we conclude that the lineup was conducted improperly and that defendant's motion to suppress would probably have been granted had a hearing been held. However, our analysis does not stop here. We must next consider whether suppression of the identification testimony would have probably changed the outcome of the case. The facts reveal that the victim initially identified defendant's photograph from mug shots shown to her at police headquarters shortly after the robbery incident. Where an identification confrontation is found suggestive, another may be admissible if it is shown by clear and convincing evidence that the other identification had an independent origin arising from an earlier uninfluenced observation of the defendant. (See *People v. Camel* (1974), 59 Ill. 2d 422, 431, 322 N.E.2d 36.) The criteria for determining whether an independent origin exists for an identification are set forth in *People v. Ganter* (1977), 56 Ill. App. 3d 316, 322, 371 N.E.2d 1072 as follows:

(1) opportunity of the witness to view the accused at the time of the crime; (2) accuracy of the witness' prior description of the crime; (3) the witness' degree of attention; and (4) the length of time between the crime and the confrontation.

In the case at bar, the victim had ample opportunity to view the robber in a well-lit area. She provided a detailed, uncontradicted description of the defendant to the police immediately after the robbery. Her description of defendant's clothing was corroborated by a photograph of defendant taken at the prior unrelated lineup. The photographic identification took place within a week of the incident. Applying the *Gantner* standard, it is our opinion that these facts convincingly establish that the victim had an uninfluenced observation of defendant, independent of the improperly conducted lineup, that was sufficient to support defendant's conviction of robbery.

Therefore, although we find that defense counsel's strategy not to file an affidavit was based on a misinterpretation of the constitutional guarantees of equal protection and freedom from self-incrimination, and, as a result, deprived defendant of a hearing to which he was otherwise entitled, we do not find that counsel's actions caused such substantial prejudice to defendant that the outcome of the trial was probably changed. Therefore, we affirm the trial court's judgment.

Affirmed.

LORENZ and MEJDA, JJ., concur.