THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL MILTON, Defendant-Appellant.

First District (2nd Division) No. 1—88—2290

Opinion filed March 28, 1991.—Rehearing denied April 23, 1991.

Michael Pelletier and Maria Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gayle Terry, and Margaret Iwerbon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

A jury found defendant Darrell Milton guilty of delivery of more than 1 but less than 15 grams of a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b).) He was sentenced to 8½ years in prison concurrent with an identical term for another delivery of controlled substances charge to which he pleaded guilty. He was also fined $11,500. Defendant appeals from the jury conviction, presenting the following issues: (1) whether the trial court erred in requiring defendant to submit an affidavit to establish an entrapment defense in support of his motion to produce information about the police informant; (2) whether defense counsel's failure to object to the State's use of the affidavit for impeachment purposes constituted ineffective assistance of counsel; and (3) whether the State's closing argument improperly shifted the burden of proof to defendant.

At trial, Willie Davis, a special agent with the Illinois Department of State Police, testified on behalf of the State. On March 12, 1987, Anthony McDuff, who had been introduced to Davis by another police officer, introduced Davis to defendant in a trailer. McDuff informed defendant that Davis was the person who "wanted to purchase the cocaine." Defendant asked how much Davis wanted and was told one-sixteenth of an ounce. As defendant pulled a clear plastic bag from his pants pocket, someone pulled up in a car and sounded the horn. Defendant put the plastic bag back into his pants pocket, left the trailer, entered the car, and sat in the passenger seat. Davis saw defendant give the plastic bag in his pants pocket to the person in the car, take money from him, exit the vehicle, and return to the trailer.

Inside the trailer, defendant reached into his coat and retrieved another clear plastic bag containing a white powdery substance. Defendant measured the cocaine, gave Davis the amount he had requested, and took $150 from him. At the end of the transaction, defendant and Davis discussed the possibility of a five-ounce-cocaine transaction and defendant gave Davis a piece of paper containing defendant's pager number. Defendant was never charged with this March 12 transaction.

When Davis contacted defendant through defendant's pager, they arranged to meet for another cocaine transaction on March 24, 1987. Davis met defendant at a Shell gas station located at 87th and State Streets at approximately 3:55 p.m. on March 24, 1987. Two other special agents acted as surveillance officers. Defendant approached Davis and informed him that he did not have the cocaine but that it would take him 20 minutes to get it. He told Davis to meet him at 98th and Halsted Streets.

After Davis arrived at that location, defendant entered his vehicle and requested that he park around the corner. When Davis did so, defendant handed him a clear plastic bag containing a white powdery substance, which was later determined to be seven grams of a substance containing cocaine. In return, Davis paid defendant $500. After the transaction, Davis drove defendant back to 98th and Halsted, dropped him off, and departed. This March 24 transaction was the charged offense in the jury trial.

When called as a rebuttal witness, Davis further testified that he contacted defendant again on March 26, 1987, and arranged a meeting to conduct another cocaine transaction. Davis met defendant on March 27, 1987, at 87th and Lafayette at approximately 7:15 p.m. and purchased eight ounces of cocaine from him for $11,600. This transaction constituted the offense to which defendant pleaded guilty.

Defendant testified on his own behalf that he was a truck driver and tree trimmer for the City of Chicago. He stated that in 1985 he met Anthony McDuff, who worked for a trucking company, in 1985 through his job. During the latter part of 1986, defendant had an allergic reaction to trees which caused him to take a disability leave. He had been earning $10.40 per hour but did not receive any income from the city while on leave. Defendant applied for disability but only part of it was approved after he went back to work.

Defendant testified that he worked "odd jobs" during his leave and that his car was repossessed during that period. He decided that he would have to find either a better paying job or a second job. After he returned to work, he approached McDuff and asked him if his employer was hiring. McDuff stated that he was acquainted with an employee at Brown and Lambert, a construction company, and that he could ask that the employee assist in securing a job for defendant.

Defendant further testified that during several conversations with McDuff, McDuff requested that defendant introduce him to a "source" in order to obtain cocaine. Defendant initially refused. McDuff repeatedly brought up the subject, and defendant usually responded "I'll see if I can find somebody." During one of the conversations, McDuff stated

that if defendant really wanted the job he would first have to find a "source." On March 12, 1987, McDuff called defendant and asked whether defendant had found a source; defendant replied that he had.

Defendant admitted that he in fact met Davis on March 12 and sold him cocaine. Defendant stated that Davis' testimony at trial was essentially true, except that the reason he exited the trailer on March 12 was to return the excess amount of cocaine to his source. He did this because Davis asked for less cocaine than he expected. He denied accepting any money from that person. Defendant further testified that he received a call from Davis on March 20 to arrange another cocaine transaction but that he never initiated any of the calls except when he returned Davis' calls. Defendant also admitted selling cocaine to Officer Davis on March 24 and March 27, 1987, but stated that he was merely acting as a "middle man."

On cross-examination, defendant testified that, when he returned to work after his disability leave, he was earning approximately $25,000 per year and that he was living with his mother. The assistant State's Attorney impeached defendant by using defendant's signed affidavit which provided in paragraph 12 that the "affiant was tempted by the possibility of additional income offered by McDuff." Defense counsel's objection on the grounds that this was not impeaching was overruled; however, there was no specific objection to the State's use of the affidavit.

Defendant further testified that in all the cocaine transactions he merely acted as a middle man. He stated, however, that McDuff neither coerced him to sell cocaine nor threatened him. Moreover, defendant never saw or spoke to McDuff after the initial drug transaction with Davis.

Michael Turpeau testified for the defense. He was defendant's co-worker and also knew McDuff through his job. He stated that, during late 1986 and early 1987, McDuff continually pestered him to find someone who would sell him cocaine. Turpeau refused each of McDuff's requests.

Carl Bodnar testified on behalf of defendant that he and McDuff had stolen cars together and had been arrested on January 9, 1986. Bodnar stated that they both pleaded guilty and that he was sentenced to eight years' imprisonment while defendant was sentenced to five. Bodnar went to prison but never saw McDuff there. Later, Bodnar telephoned McDuff and learned from him that he had retained a different lawyer and was to be placed on probation instead.

On cross-examination, Bodnar admitted that he had been on probation for a similar offense at the time of his sentencing and that he was

charged with 15 counts while McDuff was charged with about five counts. Moreover, Bodnar testified that about 133 individuals were arrested at the time and charged with auto theft, and that only 15 individuals, each of whom was charged with 10 to 15 counts, received prison sentences.

Major Charles Doerr testified for the defense. As an area commander for the State Police, he supervised criminal investigations. He wrote a letter to the Will County State's Attorney at the request of one of the zone commanders. The letter requested that consideration be given to McDuff in return for his cooperation with the police.

Philip Mock, a Will County assistant State's Attorney, also testified on defendant's behalf. Mock prosecuted the case against McDuff; in return for a guilty plea, he agreed to recommend a term of imprisonment no greater than five years. He received the letter from Major Doerr; it was a factor in his recommendation that McDuff receive probation.

After the jury's verdict of guilty, defendant pleaded guilty to the March 27, 1987, delivery charge. The trial court sentenced defendant to concurrent 8½ year terms of imprisonment.

I

■ Defefendant initially contends that the trial court erred in requiring him to submit a signed, sworn affidavit concerning his entrapment defense in support of his motion to obtain information about the police informant. Defendant argues that by requiring him to disclose the details of his entrapment defense prior to trial in order to obtain relevant information essential to his defense, the trial court forced him to incriminate himself. Though the State's position that this issue was not properly preserved for appeal is correct (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124), we will address the issue to determine whether any substantial rights of defendant were violated under the plain error rule. 134 Ill. 2d R. 615.

In a pretrial motion, defendant had requested that any and all papers, documents, and evidence concerning McDuff, the police informant in this case, be tendered to him. Defendant also requested information concerning McDuff's criminal history and information relating to any assistance rendered by McDuff in the investigation of defendant and in other investigations. The trial court denied the request, but granted defendant leave to submit a motion to reconsider its ruling.

At a subsequent hearing, the trial court again denied defendant's motion for the requested information. In doing so, the court relied upon the holding in *People v. Thornton* (1984), 125 Ill. App. 3d 316, 465 N.E.2d 1049, where the appellate court held that the pretrial disclosure

of an informant was unnecessary because the defendant offered no adequate reason to the trial court for requiring disclosure and because the informant was not involved in the transaction for which the defendant was prosecuted. At bar, the trial court also referred to the holding in *People v. Adams* (1983), 116 Ill. App. 3d 315, 451 N.E.2d 1351, which upheld the constitutional validity of the affidavit requirement of Cook County Circuit Court Rule 15.1(e) and *People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186, which was an example of a case where an unrebutted affidavit of a defendant claiming an entrapment defense led to a dismissal of charges because of the State's nondisclosure of discovery information ordered by the trial court.

After again denying defendant's requests, the court again continued the case, giving defendant still another opportunity to establish that the requested information was relevant to an entrapment defense by citing the procedure followed in *Raess*.

At the next pretrial hearing, defendant filed his affidavit wherein he admitted engaging in the three deliveries of cocaine, and spelled out his entrapment defense. Based upon this affidavit, the trial court ordered the State to furnish all the requested information, except for information relating to other investigations.

■ Defendant's contention, then, that he was required by the trial court to furnish an affidavit is not substantiated by the record. What the record shows is that the trial court properly denied defendant's initial discovery requests because he provided an insufficient basis for them. It further shows that the trial court allowed defendant opportunities to furnish a sufficient basis, suggesting the affidavit procedure followed in *Raess*. This procedure did not compel defendant to file an affidavit; defendant's contention to the contrary lacks merit.

## II

Defendant next contends that he did not receive effective assistance of counsel because his attorney failed to object to the State's use of defendant's affidavit to impeach his trial testimony.

■ In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court announced the two-prong test which must be satisfied by a defendant to support a claim of inadequate representation of counsel. Defendant must first show that counsel's representation fell below an objective standard of reasonableness. Defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) The *Strickland* standard was

adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ When a defendant elects to be a witness in his own case, he becomes subject to cross-examination and impeachment just like any other witness. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666.) As the United States Supreme Court said:

> "Every criminal defendant is privileged to testify in his own defense, or refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris v. State of New York* (1971), 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645.

■ In this case, defendant stated on cross-examination that McDuff "insured" him that he would secure a job for defendant. The State then asked defendant whether he stated in his affidavit that he was "tempted by the possibility of additional income offered by McDuff." Defendant first replied that he did not read the affidavit carefully before signing it. Later, he stated that everything contained in the affidavit was true. Since defendant made an inconsistent statement, the State had the right to impeach him with the affidavit. Thus, defense counsel's failure to object to this proper form of impeachment cannot be characterized as ineffective assistance of counsel.

■ We are satisfied, too, that ineffective assistance of counsel was not established by defense counsel's tactic in filing the affidavit of defendant. We note that that tactic was successfully utilized by the defendant in *People v. Raess* and that our supreme court has held that a precondition to raising the entrapment defense is that the defendant must admit that he committed the offense. *People v. Gillespie* (1990), 136 Ill. 2d 496, 552 N.E.2d 894.

■ Moreover, the record demonstrates that defense counsel presented a zealous defense at all stages of the proceedings. Counsel filed several pretrial motions and presented case law supporting them, made arguments and objections at trial, presented witnesses on defendant's behalf, and vigorously cross-examined the State's witnesses. Defense counsel also participated effectively in post-trial proceedings. It cannot be said that defense counsel's representation was inadequate.

### III

Defendant's final contention is that the State's closing argument improperly shifted the burden of proof to him. Though the State's contention that defendant has not properly preserved this issue is correct, we will consider whether plain error occurred.

During his closing argument, defense counsel argued that defendant was induced to deliver cocaine to Davis because defendant was experiencing financial difficulty and McDuff offered to find him a job in return for delivery of controlled substances. In rebuttal, the State argued that defendant delivered controlled substances solely because of his own personal greed and that he was not experiencing any financial difficulty. The prosecutor then questioned why defendant did not produce any disability forms, tax returns, or other evidence of his poor financial situation.

 ■ We find the words of the Illinois Supreme Court, in a case where a similar argument of burden-shifting was made, to be apropos here:

> "As defendant noted, this court has long held that it is impermissible for the prosecution to attempt to shift the burden of proof to the defense. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470.) Indeed, the defense is under no obligation to present any evidence; 'the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime.' (35 Ill. 2d at 470.) This court has never said or implied, however, that once a defendant does present certain evidence it is beyond the reach of appropriate comment by the prosecution. There is a great deal of difference between an allegation by the prosection that defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case. (See *People v. Adams* (1985), 109 Ill. 2d 102, 120-21; *People v. Albanese* (1984), 104 Ill. 2d 504, 521-22.) Not every prosecutorial statement questioning relevance or credibility rises to an impermissible shifting of the burden." (*People v. Phillips* (1989), 127 Ill. 2d 499, 527, 538 N.E.2d 500.)

As in *Phillips*, we find that the State did not shift the burden of proof to defendant in this case.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.