THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES LEGGANS, Defendant-Appellant.

Fifth District   No. 5—91—0306

Opinion filed December 27, 1993.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Charles Leggans, was charged in the circuit court of Jackson County with two counts of aggravated criminal sexual assault for the July 14, 1989, sexual assault of his niece, S.C. (count I), and the July 15, 1989, sexual assault of R.L., the daughter of defendant's fiancee (count II). Defendant's first jury trial in March of 1990 ended in a mistrial when the jury could not reach a unanimous verdict. A second jury trial in February of 1991 resulted in convictions on both charges. Defendant was sentenced to a 10-year term of imprisonment on count I and a 12-year term of imprisonment on count II, with the sentences to run consecutively.

On appeal, defendant asserts that (1) he was denied his constitutional right to a public trial through the court's exclusion of all but his immediate family and the press from the courtroom during the testimony of the complainants; (2) he was denied a fair trial through the introduction of irrelevant and immaterial evidence concerning his substance abuse, including evidence allegedly admitted in violation of the therapist/patient privilege; (3) the trial court erred in precluding presentation of evidence that the complainants had previously been victims of sexual abuse; (4) expert testimony about child sexual abuse accommodation syndrome was improperly admitted in the State's case in chief without sufficient foundation; (5) the prosecutor improperly vouched for the credibility of the State's evidence and witnesses; and (6) the trial court considered improper aggravating factors in sentencing the defendant and abused its discretion by ordering that his sentences be served consecutively.

Initially, we note with disapproval that both defendant and the State refer in their briefs to the victims by their full names. This practice should be discontinued.

Prior to the second trial, the trial court granted the State's motion to exclude the public from the courtroom during the complainants' testimony, as it had for the first trial. Defendant maintains on appeal that his right to a public trial was abrogated through this exclusion. We disagree.

Under section 115—11 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 115—11 (now 725 ILCS 5/ 115—11 (West 1992))), the trial court may in its discretion exclude all persons who in the opinion of the court do not have a direct interest in the case, except the media, during the testimony of the victim of certain sex offenses, including the one charged in the case herein, where the victim is under the age of 18. Both of the complainants in the case at bar were under the age of 18. Defendant asserts that the State failed to show that there was an overriding interest which would be prejudiced if the State's motion to exclude all persons not having a direct interest in the case during the minors' testimony was not granted; the trial court failed to make findings in support of its conclusion that exclusion was necessary; the trial court did not consider reasonable alternatives to closing the courtroom; and the exclusion order was broader than necessary to protect the interests of the minors. Defendant argues that the record is not sufficient to show that the trial court considered the proper factors and then made a reasoned decision to exclude everyone but the defendant's father and mother and the press.

In *People v. Holveck* (1990), 141 Ill. 2d 84, 100, 565 N.E.2d 919, 927, the supreme court found that section 115—11 was constitutional through its narrow limitation to a discretionary closure which did not permit exclusion of the media in criminal cases. Furthermore, closure was limited to only the time when the minor victim testified. The *Holveck* court found that although the judge did not make a formal declaration of the reasons for closing the courtroom, such reasons were demonstrated in the record: the discomfort the young child would experience in testifying before a crowd in the courtroom and the need to prevent the possibility of emotional disturbance for the child who was testifying. *Holveck*, 141 Ill. 2d at 101, 565 N.E.2d at 926.

There is no absolute right of the public to access to criminal trials. (*Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 581, 65 L. Ed. 2d 973, 992, 100 S. Ct. 2814, 2829.) Where an overriding interest exists because of a need to preserve higher values, and an exclusion is narrowly tailored to serve that interest, the presumption of an open criminal trial may be overcome. (*Waller v. Georgia* (1984), 467 U.S. 39, 46, 81 L. Ed. 2d 31, 38, 104 S. Ct. 2210, 2215.) It is essential that the overriding interest be sufficiently supported by specific facts such that, upon review, the court may determine the propriety of the closure. *Holveck*, 141 Ill. 2d at 100, 565 N.E.2d at 926, citing *Press-Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 510-11, 78 L. Ed. 2d 629, 639, 104 S. Ct. 819, 824.

██ Although the trial court did not make a formal declaration of the reasons for closing the courtroom, the record herein clearly shows the reasons for the closure. The State's Attorney argued that closure was necessary to protect the interests of the minor victims and that the presence of the media ensured the defendant would receive a public trial. The trial court recognized the needs of the defendant to have support, in that it allowed defendant's mother and father to remain with him in the courtroom during the testimony of the children, as well as allowed the media to be present. A reading of the record as a whole shows that the trial court was aware of the competing interests of the minor witnesses and their need to be protected from undue trauma, as well as the defendant's need to have the support of his family during their testimony. The trial court applied the discretionary closure provided for in the statute in a narrow fashion, limiting the closure to the time during which the children testified and allowing the media to remain during their testimony. The statutory guidelines were adhered to, and the trial court did not overstep the authority conferred upon it, because its discretion was applied in a fashion

which was no broader than necessary to protect the interests of the minors. *People v. Benson* (1993), 251 Ill. App. 3d 144, 149.

Defendant's second allegation is that he was denied a fair trial through the introduction of evidence concerning his difficulties with alcohol and drugs and the rebuttal testimony of Greg Dillard, an employee of the Fellowship House, a substance abuse rehabilitation center. Defendant maintains that this evidence was improperly admitted because it was irrelevant and immaterial. This argument, too, is without merit.

In his case in chief, defendant testified that he was unable to drink much alcohol because he had ulcers. During cross-examination, defendant asserted that he drank 3½ beers on the night of the assault on S.C. He was impeached with his testimony from the first trial, where he testified that he drank a couple of beers on the night in question. Defendant minimized the amount he drank in general in July of 1989, and the prosecutor impeached him with his statement made to Greg Dillard of Fellowship House, that he drank a case of beer every other day. Defendant denied making the statement and asserted that he had never spoken with Dillard.

When a defendant takes the stand in his own defense, he becomes subject to impeachment by cross-examination, as does any other witness. (*People v. Milton* (1991), 211 Ill. App. 3d 1006, 1013, 570 N.E.2d 865, 869.) Wide latitude in impeachment of witnesses is permissible where the credibility of the witness is crucial. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 730, 523 N.E.2d 1061, 1072.) The purpose of impeachment evidence is to cast light on the credibility of the witness, not to show the truth of the impeachment evidence itself. *People v. Redd* (1990), 135 Ill. 2d 252, 316-17, 553 N.E.2d 316, 345.

■ Defendant testified on direct examination that he had entered Fellowship House on a self-referral in order to avoid falling into an unhealthy lifestyle. He testified: "I can't even drink a lot anyway because I have ulcers, and I wanted to better my life." Defendant was arrested by Union County law enforcement officers on the instant charges while he was a resident of Fellowship House. The defendant opened himself to cross-examination and impeachment through his introduction of testimony concerning his drinking and his presence at Fellowship House at the time of his arrest. The prosecutor properly impeached him with evidence which cast doubt upon his credibility. Furthermore, the prosecutor stated in closing argument: "The question of [defendant's] drinking is not the issue. The question of his lying is the issue ***." The jury was therefore made aware that the im-

peachment evidence was directed at defendant's credibility, as opposed to showing the truth of the impeachment evidence itself.

Defendant's assertion that the rebuttal testimony of Greg Dillard, an employee of Fellowship House, was improperly admitted is also without merit. Dillard attempted to assert what he termed "Federal confidentiality regulations" in resistance to testifying. When he was examined outside of the presence of the jury, Dillard told the court that he was invoking a "confidentially statute" on advice of Fellowship House's counsel, and he refused to testify unless ordered to do so by the court. The court determined that the information was no longer confidential because counsel for Fellowship House had discussed the contents of defendant's file with the prosecution. Dillard then testified before the jury that when defendant was screened for admission to Fellowship House, which offers alcohol and drug abuse detoxification programs, defendant stated that he drank a case of beer every other day and was involved in other substance abuse.

■ Defendant first objected at trial to the introduction of this evidence on the basis of privilege, without specifying the nature of the privilege. Neither his contemporaneous objections based on "Federal confidentiality statutes" nor his post-trial motion referred to the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1991, ch. 91½, par. 801 *et seq.*) (the Act), and therefore his failure to contemporaneously object and specifically include the issue in a post-trial motion results in waiver of the issue on appeal. Even if he had objected on the specific ground of a violation of the Act and properly preserved the issue in his post-trial motion, he would not prevail.

Defendant maintains that the intake information provided to Dillard was privileged under the Act. Under section 10(a) of the Act, in any criminal proceeding a recipient and the therapist, on behalf of and in the interest of a recipient, have the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications. (Ill. Rev. Stat. 1991, ch. 91½, par. 810(a).) A recipient is defined by the Act as "a person who is receiving or has received mental health or developmental disability services." (Ill. Rev. Stat. 1991, ch. 91½, par. 802(6).) A "record" is defined by the Act as any record kept by a therapist or by an agency in the course of providing mental health or developmental disability service to a recipient concerning a recipient and the services provided. (Ill. Rev. Stat. 1991, ch. 91½, par. 802(7).) However, "mental health services" have been construed to not include alcoholism treatment. (See *Maxwell v. Hobart Corp.* (1991), 216 Ill. App. 3d 108, 111, 576 N.E.2d 268, 270.) Defendant's

communications with Fellowship House, an alcohol and drug rehabilitation facility, were therefore not privileged under the Act.

Defendant next contends that the trial court erroneously excluded evidence that the complaining witnesses had previously been victims of sexual abuse. He asserts this evidence would have permitted the jury to conclude that someone other than the defendant caused the harm to the girls and that the girls had sufficient knowledge of sexual activity to allow them to fabricate their allegations against the defendant.

Under section 115—7 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 115—7 (now 725 ILCS 5/115—7 (West 1992))) (hereinafter rape shield statute), in prosecutions for aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, or criminal sexual abuse, the prior sexual activity or reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct with the defendant. The trial court found that the rape shield statute applied and ruled that it precluded evidence of any prior sexual experience on the part of the complainants.

Defendant relies on *People v. Sandoval* (1990), 135 Ill. 2d 159, 174-75, 552 N.E.2d 726, 740, for the proposition that there are certain situations in which the rape shield statute may not apply because of the defendant's constitutional right to confrontation. The State argues that this comment referred to the *Sandoval* court's earlier analysis of *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. The *Sandoval* court noted: "the *Davis* decision *** does not present the defense with a blanket invitation to attack a witness. Rather, *Davis* limits such an attack to situations where the confrontation is both relevant and based on a showing of bias, prejudice or motive. *** The emphasis in *Davis* was not to *create* an exception to the statutory protection, but to *prevent* the statute from creating an exception to the well-settled and accepted admissibility of the motive, bias or prejudice of a particular witness." (Emphasis in original.) *Sandoval*, 135 Ill. 2d at 174-75, 552 N.E.2d at 733.

Defendant's attempt to circumvent the rape shield statute was intended to divert the focus of the jury from the accusations against him and cannot be permitted. (See *People v. Todd* (1993), 241 Ill. App. 3d 542, 551, 608 N.E.2d 933, 939.) The trial court precluded evidence of previous sexual activity on the part of the complainants prior to trial through motions which brought the information before the court in a timely fashion. The trial court's decision was based on the statutory mandate created by the rape shield statute, and we cannot find that the defendant was substantially prejudiced by the trial

court's ruling on this issue. See *People v. Campos* (1987), 155 Ill. App. 3d 348, 359, 507 N.E.2d 1342, 1349.

Defendant also argues that the trial court committed error by allowing expert testimony regarding child sexual abuse accommodation syndrome in the prosecution's case in chief, rather than in rebuttal, and in permitting such evidence without presentation of a foundation demonstrating the reliability of such testimony. Defendant objected at trial to the expert testimony of Dr. Virginia Hoffman as irrelevant. His assertion of error in his post-trial motion merely alleged that the trial court erroneously allowed Dr. Hoffman's testimony. The reasons asserted on appeal were not put forward at the trial level. When a party specifically objects to certain evidence, all grounds not specified are waived. (*People v. Nichols* (1992), 235 Ill. App. 3d 499, 513, 601 N.E.2d 1217, 1227, citing *People v. Eyler* (1989), 133 Ill. 2d 173, 549 N.E.2d 268.) Furthermore, although defendant objected to the testimony of Dr. Hoffman in his post-trial motion, his objection was a general one, lacking in specificity. Errors which are not raised with sufficient specificity in the post-trial motion are not preserved for appellate review. *People v. Moman* (1990), 201 Ill. App. 3d 293, 318, 558 N.E.2d 1231, 1247.

■ Defendant urges this court to entertain the issue as a plain error which affects substantial rights, despite the fact that it was not brought to the attention of the trial court in a proper fashion. (See 134 Ill. 2d R. 615(a).) This court found in *People v. Votava* (1991), 223 Ill. App. 3d 58, 73-74, 584 N.E.2d 980, 991, that the plain error doctrine does not operate as a general savings clause but applies only to instances where the evidence is closely balanced and the error affects substantial rights. Our review of the record reveals that the State presented overwhelming evidence against the defendant. The victims testified that defendant assaulted S.C. in the presence of R.L. on the evening of July 14 and sexually assaulted R.L. in the presence of S.C. the next morning. The mother of each child testified that the children had made complaints to them. Other witnesses corroborated their complaints. The defendant's challenges to the credibility of the witnesses were insufficient to render the evidence closely balanced, and therefore the plain error doctrine cannot be invoked under these circumstances.

Even if defendant had not waived this issue through his failure to object to the introduction of Dr. Hoffman's testimony on the basis of an adequate foundation or to object because it was presented in the State's case in chief, rather than in rebuttal, thus preserving the issue for appeal, he would not prevail. The trial court has a responsibility to

determine the admissibility of expert testimony and wide discretion in making that determination. The decision of the trial court will not be overturned on review unless clearly and prejudicially erroneous. (*People v. Haun* (1991), 221 Ill. App. 3d 164, 174, 581 N.E.2d 864, 869.) The evidence presented by Dr. Hoffman, that the girls exhibited signs which were consistent with having been sexually abused, was relevant and probative to whether the crimes occurred. (See *People v. Boclair* (1989), 129 Ill. 2d 458, 477, 544 N.E.2d 715, 723.) It was presented in the State's case in chief as substantive evidence, in that it was adduced for the purpose of proving a fact in issue, as opposed to evidence given for the purpose of discrediting a witness or of corroborating his testimony. *Redd*, 135 Ill. 2d at 302, 553 N.E.2d at 338; see also Black's Law Dictionary 1429 (6th ed. 1990).

The supreme court found in *People v. Wheeler* (1992), 151 Ill. 2d 298, 308, 602 N.E.2d 826, 831, that expert testimony relating to the rape trauma syndrome is the subcategory of posttraumatic stress syndrome which is common to victims of sexual assault. The court found: "Unlike psychological evidence regarding the victim's competency and credibility as a witness, evidence of rape trauma syndrome is *substantive evidence that a sexual assault occurred*. By showing that a complainant suffers from psychological symptoms common to most victims of sexual assault, this evidence tends to support the proposition that the complainant was also the victim of a sexual assault." (Emphasis added.) (*Wheeler*, 151 Ill. 2d at 308, 602 N.E.2d at 831.) In *Wheeler*, the State presented testimony in its case in chief of a psychotherapist who had interviewed the complainant. She testified that based upon her interview, she determined that the complainant exhibited symptoms consistent with rape trauma syndrome. See *People v. Wheeler* (1991), 216 Ill. App. 3d 609, 613, 575 N.E.2d 1326, 1330, *rev'd on other grounds* (1992), 151 Ill. 2d 298, 602 N.E.2d 826.

In the case at bar, Dr. Hoffman, a senior counseling psychologist at the counseling center of Southern Illinois University, testified about child sexual abuse syndrome after identifying the syndrome, discussing various characteristics of the syndrome, and discussing the syndrome in the context of hypothetical questions. Child sexual abuse syndrome is a recognized and accepted form of posttraumatic stress syndrome. (*People v. Pollard* (1992), 225 Ill. App. 3d 970, 976, 589 N.E.2d 175, 179; *People v. Nelson* (1990), 203 Ill. App. 3d 1038, 1041, 561 N.E.2d 439, 444.) It was therefore admissible under section 115—7.2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—7.2 (now 725 ILCS 5/115—7.2 (West 1992))) as testimony of a recognized posttraumatic syndrome. Furthermore, an ade-

quate foundation was laid to allow the testimony of Dr. Hoffman as an expert and for the content of her testimony.

Defendant asserts that this court's decision in *Nelson* precludes introduction of expert testimony on child sexual abuse syndrome in the State's case in chief. Given that *Nelson* was decided prior to and thus without the guidance afforded by the supreme court's decision in *Wheeler*, the limitation of such testimony to rebuttal is no longer necessary.

Defendant next asserts that he was denied a fair trial by the prosecutor's closing argument by virtue of comments which he alleges improperly vouched for the credibility of the State's evidence and witnesses, and that the State improperly shifted the burden of proof to the defendant by arguing that the main issue of the case was whether or not the defendant was being truthful. These allegations of error are waived because defendant failed to object to them at trial and did not raise them with sufficient specificity in his post-trial motion. (*People v. Morgan* (1991), 142 Ill. 2d 410, 445, 568 N.E.2d 755, 771, *rev'd on other grounds* (1992), 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222.) Given that the evidence was not closely balanced and the complained-of remarks were not so inflammatory as to deny the defendant a fair trial, these allegations of error do not constitute plain error. (*People v. Fields* (1990), 135 Ill. 2d 18, 59-60, 552 N.E.2d 791, 814-15.) Even if defendant had properly preserved these issues, he would not prevail.

The State is afforded great latitude when making closing arguments. (*People v. Morgan* (1986), 112 Ill. 2d 111, 131, 492 N.E.2d 1303, 1310.) A remark made by the prosecution in closing argument will not be deemed to constitute reversible error unless the remark resulted in substantial prejudice to the accused, such that the verdict would have been different had it not been made. (*Morgan*, 112 Ill. 2d at 132, 492 N.E.2d at 1311.) In determining whether the remarks are clearly prejudicial, the court must refer to the content of the language used, its relation to the evidence, and its effect on the rights of the accused to a fair and impartial trial. *People v. Peeples* (1993), 155 Ill. 2d 422, 482-83, 616 N.E.2d 294, 322.

■■ Defendant argues that the prosecutor improperly vouched for the credibility of the State's witnesses when the State's Attorney commented, "We cannot and we will not, we must not, we shall never present fabricated evidence in a court of law." Read in context, the statement referred to the failure of the mothers of the complainants to preserve evidence of the sexual assaults which may have been present on the clothing of the children and one mother's instructions

to her daughter to douche in order to prevent pregnancy or disease, rather than to take the child to the hospital in order to have evidence of the assault preserved in a Vitullo kit. The second comment about which defendant complains is the State's Attorney's comment, "[I]s this fabrication here? Is there fabrication? (Negative nod, negative nod.)" The statement was made after the State's Attorney described S.C.'s apparent revulsion while testifying about her act of cleaning the defendant's body fluids from her genitalia after the assault. Neither of the State's Attorney's comments, viewed in context, constitutes a vouching for the credibility of the witness by the State's Attorney. They are comments which invite the jury to assess the credibility of the witnesses, which the State's Attorney may properly do during closing argument. See *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 884, 572 N.E.2d 1219, 1227 (State's Attorney's comments reflected what attorneys and jury observed as complainant sobbed on stand, reflecting that testifying was an emotional experience, as was the assault by the defendant).

Defendant complains that the prosecutor improperly stated that in order to believe the defendant's testimony, the jury must find that all of the State's witnesses lied. The complained-of statement reads as follows:

"First job: you have your choice either Gayla is lying, Mary is lying, [R.L.] is lying, [S.C.] is lying, Francis Klink is lying about the wedding plans, Bob Burnes is lying, Mike Teas is lying, Greg Dillard is lying, and Dr. St. Germain is just a paid medical hack, and Mary Williams cannot be trusted, and Fellowship House is a residential vacation spot for born-again Christians or this man [defendant] is a liar and a child rapist. These are the choices that this evidence presents to you."

Prior to this statement of which defendant complains, the prosecutor exhaustively recapitulated and contrasted the testimony of the State's witnesses and that of the defendant. Read in context, the statement is not a bald representation that in order to find the defendant not guilty the jury had to find that all the State's witnesses were lying, the type of statement which has been found improper and tantamount to reversible error. (See *People v. Burrell* (1992), 228 Ill. App. 3d 133, 145, 592 N.E.2d 453, 462.) The comments here properly address the issue of witnesses' credibility.

The defendant's assertion that the prosecutor improperly shifted the burden of proof to the defendant is also without merit. The statement of which he complains reads as follows:

"Let's compare who is telling the truth here and who is not because that is the crux of the case. The Defendant says to you, to you the factfinders, under an oath where he swore to tell the truth, that this never happened. And the key issue here is whether or not—Let me rephrase that. The key issue here is not whether or not this man [the defendant] was ever abused. That may have some interest, but that is not the key issue. The key issue is whether or not that man, who you heard tell you under oath that he never told anyone that he was abused, was lying or not; and Gayla heard it and Mary heard it and Greg Dillard, from the Fellowship House, heard it. He lied to you and do you know it was with a straight face. It was glib, it was smooth. The question is, who is telling the truth; and it wasn't just one lie."

Following the statement, the State went on to contrast the inconsistencies between defendant's testimony and that of the witnesses for the State.

These comments do not address the burdens of the respective parties. The prosecutor merely stated the obvious: given the evidence in the case, either the State's witnesses or the defendant told the truth about the assaults, and if one version of the incidents was the truth, the other version must necessarily be a lie. Given that neither the recall of the witnesses nor the complainants' opportunity to observe the assaults was in serious dispute, the prosecutor could properly make such comments. *People v. Smith* (1991), 220 Ill. App. 3d 39, 47, 580 N.E.2d 891, 896.

Defendant last asserts that the trial court abused its discretion in sentencing him by considering a factor allegedly inherent in the offense, that the defendant caused or threatened serious harm to the victims as an aggravating factor, and by imposing consecutive sentences without stating for the record that the consecutive sentences were necessary to protect the public.

■ Defendant's assertion that the trial court improperly considered that the defendant caused or threatened serious harm to the victims because that factor is inherent in the offense of aggravated criminal sexual assault is erroneous. Under section 5—3—2 of the Unified Code of Corrections, the presentence report must set forth the effect of the offense upon the victim. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—2(a)(3) (now ILCS 730 5/5—3—2(a)(3) (West 1992)).) Furthermore, a factor in aggravation to be considered by the trial court is whether the defendant's conduct caused or threatened serious harm. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(1) (now 730 ILCS 5/

5—5—3.2(a)(1) (West 1992)).) Acts of sexual abuse of minors almost inevitably cause emotional harm to the victims. (See *Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 929, 559 N.E.2d 559, 561-62.) The psychological harm caused by the act of molestation of a child is a proper factor to consider in aggravation when sentencing a defendant. (*People v. Pavlovskis* (1992), 229 Ill. App. 3d 776, 782, 595 N.E.2d 587, 592.) The trial court had ample evidence in the presentence report of the psychological damage caused to the two minor victims by the defendant's acts of sexually assaulting the children and had observed the demeanor of the children during their testimony at the trial. It properly considered harm as an aggravating factor.

It should be noted that consecutive sentences in this case were not mandatory under *People v. Bole* (1993), 155 Ill. 2d 188, 198, 613 N.E.2d 740, 744-45. There, the supreme court found that the statutory language of section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a) (now 730 ILCS 5/5—8—4(a) (West 1992))) requires the imposition of consecutive sentences only when the subject offenses are committed in a single course of conduct. Defendant in the case at bar was found guilty of two counts of aggravated criminal sexual assault. One count stemmed from his act of assaulting S.C. on July 14, 1989, and the other count stemmed from his act of assaulting R.L. on July 15, 1989. These acts of sexual assault were perpetrated upon different individuals, in different locations, on different dates. While the phrase "course of conduct" can include a range of activity and is not necessarily confined to a single incident (see *Bole*, 155 Ill. 2d at 193, 613 N.E.2d at 743), defendant's offenses were clearly not committed as part of a single course of conduct as that phrase is used in section 5—8—4(a). They were separate acts; therefore, consecutive sentences were not mandatory. It is clear from the record that the State's Attorney did not seek consecutive sentences pursuant to section 5—8—4(a), nor were they imposed pursuant to that section.

The defendant asserts that the trial court improperly imposed consecutive sentences without making a finding that consecutive sentences were necessary in order to protect the public, and that the finding cannot be inferred from the record. Under section 5—8—4(b), a court may impose consecutive sentences when, having a regard to the nature and the circumstances of the offense and the history and character of the defendant, the court is of the opinion that such a term is required to protect the public from further criminal contact by the defendant, the basis for which the court shall set forth in the record. Our supreme court has held that the statutory requirement that

the court "shall set forth in the record" the basis for the court's determination is permissive, rather than mandatory. (*People v. Hicks* (1984), 101 Ill. 2d 366, 374, 462 N.E.2d 473, 477; see also *People v. Haun* (1991), 221 Ill. App. 3d 164, 176, 581 N.E.2d 864, 873.) Furthermore, a defendant's failure to request a specific finding of the sentencing court relative to the protection of the public, or to complain of an insufficiently articulated basis for the required statutory finding, results in a waiver of the issue upon review. *People v. Suarez* (1991), 238 Ill. App. 3d 110, 129-30, 606 N.E.2d 1237, 1245; *People v. Woodrome* (1992), 237 Ill. App. 3d 220, 240, 604 N.E.2d 486, 499-500.

■ Waiver notwithstanding, the record in the instant case reveals that defendant's consecutive sentences were appropriate in light of the nature of the crimes which he committed, his history and character as reflected in the presentence report, and other evidence brought before the sentencing court. No abuse of discretion appears. Defendant's sentences of 10 and 12 years' imprisonment are well within the 6- to 30-year range available for the conviction of a Class X felony. One sentence is one-third of the possible maximum, the other is less than half the possible maximum. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3)).) Given that the trial court is entitled to wide latitude in sentencing and its decision is entitled to great weight and deference on review, we will not alter a trial court's decision on sentencing absent an abuse of discretion, which we do not find here. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49.

■ Defendant also raises numerous allegations of ineffective assistance of counsel. Having reviewed the record, we find that all of the alleged instances of ineffective assistance of counsel were either not errors or, if they were, were ones which did not prejudice his cause such that the outcome of the cause was rendered unreliable. *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1254-55.

The defendant's convictions and sentences are affirmed.

Affirmed.

GOLDENHERSH and WELCH, JJ., concur.